Gilberto GARCIA, Appellant,

v.

STATE of Texas, Appellee.

No. 13–87–419–CR.

Court of Appeals of Texas,
Corpus Christi.

Sept. 8, 1988.

Alfredo Montelongo, Corpus Christi, for appellant.

Grant Jones, Deanie King, Corpus Christi, for appellee.

Before NYE, C.J., and DORSEY and BENAVIDES, JJ.

## OPINION

DORSEY, Justice.

A jury found appellant, Gilberto Garcia, guilty of sexual assault by penetrating the mouth of the complainant with his sexual organ under the compulsion of force. The trial judge assessed punishment at 12 years in the Texas Department of Corrections. Appellant contends by his sole point of error that the court erred in precluding "appellant from developing facts essential to his defense in violation of his right to effective cross-examination and confrontation." We affirm.

While walking to a friend's house at 2:00 a.m. on June 8, 1987, the complainant testified she was approached by the appellant, who grabbed her, pulled her into the grass, and compelled her to perform oral sex on him. After the act, they each went walking in separate directions, the complainant continuing on her route to the apartment of a friend, Janelle Delaney. Upon arrival she complained to Delaney of the assault and immediately called the police, who arrived shortly.

During the complainant's direct examination, she stated that she is under the care of a psychiatrist, Dr. Cecil Childers and has been diagnosed as a schizophrenic for five years. She was under medication for her mental disorder at the time of the assault. She described her schizophrenia as a thought disorder accompanied by depression and fear. She described her symptoms as her mind "racing" and difficulty in concentration. At the time of the assault, she was not experiencing any of the symptoms of the disorder, and has not experienced them since she has been on medication.

She admitted being an alcoholic, but being alcohol free at the time of the assault and for about 60 days prior to it. Although she had used illicit drugs in the past, primarily marihuana, she had not used them for about 60 days prior to the assault.

During cross-examination the complainant admitted using cocaine and speed around 1981. She had been to see Dr. Childers one week before the assault to get

her medication renewed. The medication helps her to concentrate better and without it she tends to get disoriented. Her history of drug and alcohol abuse was explored thoroughly by counsel, as were the details surrounding the assault.

Officer Hess testified that he saw appellant matching the description of the suspect hitchhiking in the vicinity of the assault, and took him to the complainant, who identified him immediately as her assailant. Delaney confirmed the complainant's arrival at her apartment, her appearance, and her complaint upon arrival that she had been sexually assaulted.

The State's last witness was Dr. Cecil Childers, whose testimony is the focus of appellant's point of error.

Dr. Childers on direct examination testified that he first saw the complainant professionally in 1983 and did not see her again until January 1987, when she was referred to him by a caseworker with MHMR. At that time he did not prescribe medication. He next saw her on April 29, and she had been seen by Dr. Ruggero on April 10.[1] Dr. Childers saw her again towards the end of May and June 30, after she was assaulted. He expressed an opinion that her illness, schizophrenia, would not impair her ability to tell the truth.

On cross-examination, Dr. Childers stated that the complainant on April 10 was hearing voices and was very confused according to Dr. Ruggero's notes. The medicine Dr. Childers prescribed, Navane, an anti-psychotic drug, was given to her in a 30–day supply, which was renewed at each monthly visit. When he saw her on June 30, after the assault, she was having a number of problems and he increased her medication.

When Dr. Childers was asked about his first consultation with the patient in 1987, he referred to a consultation sheet prepared by a therapist requesting an evaluation by Childers. The consultation sheet stated that the patient complains of anxiety and depression, hears music and voices inside her head, and sees "ugly faces" when she goes to sleep. Dr. Childers concluded, at the time of her evaluation on January 20, 1987, that she did not require medication.

When counsel inquired about Dr. Childer's next visit with the complainant, he asked if he had any notes from any other doctor or therapist. Objection was made on hearsay grounds, after which a dialogue between the court and counsel took place wherein the judge questioned the relevancy of her past medical history. The exchange concluded with the following:

THE COURT: I'm going to limit it to those events preceding the rape and that means the examination prior to and after and nothing more.

MR. SHAFFER: [For the Defense] That's what I'm asking.

THE COURT: I'm not going to let you go into January and on through. The events preceding only.

MS. RAMOS: [For the State] Excuse me, Your Honor, would that also be limited to the doctor's own personal examination and his own notes?

THE COURT: Yes, I think that's advisable....

\* \* \* \* \* \*

THE COURT: Yes, sir, *the records of this particular doctor doing this examination, not what other doctors have done. I'm going to limit it to that.* You may proceed.

The cross-examination of Dr. Childers continued and when asked his conclusion after reading Dr. Ruggeros' notes and seeing the patient on April 29, the trial court interrupted saying that Dr. Childers could testify as to what he did, but not as to what anyone else said or did. Dr. Childers said that he diagnosed her on April 29 as having a return of the schizophrenic illness, and he refilled the anti-psychotic medication prescribed by Dr. Ruggero. Dr. Childers runs a medication clinic and performs evaluations of therapists' impressions. The patient was being seen regularly by Johnny Howe, a therapist.

---

1. Dr. Childers was apparently testifying from his notes, as he made frequent references to them. No question nor objection was raised as to his use of notes.

At subsequent visits Dr. Childers modified her medication and testified as to the effect of stress or the failure to take the medication on the complainant. He described her imaginary perceptions as "bizzare" in 1982, with voices telling her what to do, cars speeding by screaming her name, and her experiencing them as though they were real. The State rested.

The appellant testified, admitting the sexual transaction with the complainant, but stated that it was consensual and at her instigation.

Appellant's sole point of error complains that the trial court interfered with his right of cross-examination by preventing him from developing facts essential to his defense. No formal bill of exception nor informal offer of proof was made by the defense. Our first inquiry is whether the alleged error has been properly presented for review in view of the absence of a bill of exception or offer of proof allowing us to judge the context and significance of the testimony that would have been developed but for the trial court's ruling.

In *Virts v. State*, 739 S.W.2d 25, 29 (Tex. Crim.App.1987), the court elucidated the holding in *Koehler v. State*, 679 S.W:2d 6 (Tex.Crim.App.1984) and held that there is a distinction, between a situation in which the defendant desires to ask certain specific questions from a state witness but is precluded from doing so, and the situation where appellant attempts to question the witness about a certain general subject that might affect the witness' credibility. In the former situation, the appellant must preserve the questions he would have asked and the answer he would have received, or the answer he anticipated he would have received. In the latter situation, he must merely establish what general subject matter he wished to examine the witness about during his cross-examination and show the record why it should be admitted into evidence. *See also* Tex.R.App. P. 52(b) and former Tex.Code.Crim.Proc. Ann. art. 40.09, § 6(d)(1) (Vernon 1965) (repealed).

In the instant case there was voluminous testimony, both by the complainant and her psychiatrist, relating to the complainant's history of mental illness both prior to and after the assault. This evidence was elicited both on direct examination by the State and on cross-examination by the defendant. The complaint on appeal goes to the trial judge preventing Dr. Childers from testifying as to the impressions of the complainant that were recorded by other practitioners or therapists. We believe this is in the nature of the first example in *Koehler*, where specific answers are sought, rather than an entire area of examination being foreclosed. Thus, the failure to preserve the desired questions and answers, or anticipated answers, by Bill of Exceptions or informal offer of proof precludes our review of the point of error.

Dr. Childers testified as to some impressions of other mental health professionals concerning the complainant's illness. We are unable to ascertain what other notes or communications he had access to, their contents, or what effect they would have had on the verdict.

Appellant's point of error is overruled. The judgment of the trial court is AFFIRMED.